SANTEE (Case No. 12,330)                    [21 Fed. Cas. page 414]

consignees a receipt for it, and they had the right to take it without giving a receipt for it. Under the special clause, the consignees undertook the entire obligation of seeing to the removal of their cotton from the wharf, and the responsibility of the vessel, in regard to the cotton, ceased as soon as it was landed on the wharf from her tackles. The vessel was not bound to separate the libellants' cotton, either on the vessel or on the wharf, from the cotton of other parties, except by landing it, bale by bale, on the wharf. By landing the libellants' cotton on the wharf, the vessel afforded to them all the opportunity to remove the cotton from the wharf which she was bound by her contract to afford, and made all the designation and separation of the cotton which she was bound to make. Such landing on the wharf, after due previous notice, was a delivery to the right person, the freight having been paid, even though the wrong person afterwards obtained possession of the cotton.

It is argued on the part of the claimant, that this interpretation of the bills of lading is inconsistent with the doctrine, that the vessel's lien on the cargo for freight continues after the landing or unlading of the cargo, and that the vessel may, after such landing of the cargo, refuse to deliver it to the consignee till the freight is paid. Certain Logs of Mahogany [Case No. 2,559]. No such question arises in this case, as the freight was paid in advance of the unlading. But I do not perceive the inconsistency suggested. Under the bills of lading in question here, the cotton was at the risk of the consignee as soon as it was landed on the wharf, but, if the freight had not been previously paid, the vessel would have had a right to retain possession of the cotton so on the wharf, and her lien for freight on it would have continued. The consignee could not have claimed that such landing was such a delivery to him as to destroy the vessel's lien on it for the freight, while at the same time, the clauses in the bills of lading in regard to the risk of the consignee would have operated in full force. In the Case of One Hundred and Fifty-One Tons of Coal [Id. 10,520], it was held, that the mere manual delivery of an article by a carrier to the consignee, does not, of itself, operate necessarily to discharge the carrier's lien for the freight, but the delivery must be made with the intent of parting with the lien.

I perceive nothing unreasonable in the conditions of these bills of lading, and nothing that a court should hesitate to maintain. The contract is a plain one, deliberately entered into by intelligent commercial men, and the libellants had it entirely in their power to comply with its terms by stationing a proper person to watch for their cotton as it left the tackles of the vessel for the wharf.

The libel must be dismissed, with costs.

[On appeal to the circuit court, the decree of this court was affirmed. Case No. 12,330.]

## Case No. 12,329.

### The SANTEE.

[6 Blatchf. 1.] [1]

Circuit Court, E. D. New York.   Nov. 26, 1867.

COLLISION—DEMURRAGE—COMPENSATION.

The fact that the claimant in a suit, in rem, for a collision, by putting repairs on the libellant's vessel, before suit was brought, made her worth more than she was worth before the collision, furnishes no reason for refusing to the libellant a recovery for demurrage, for the time occupied in making such repairs.

[Appeal from the district court of the United States for the Eastern district of New York.]

This was a libel, in rem, filed in the district court, in a case of collision. The claimants had repaired the damage done to the libellant's vessel, but refused to pay any demurrage, for the time occupied in making repairs, and the libel was filed to recover such demurrage. The district court decreed for the libellant [case unreported], and the claimants appealed to this court. The ground taken, on the appeal, was, that no demurrage ought to be recovered, for the reason that, by the repairs, the vessel had been made worth more than she was worth before the collision.

THE COURT held, that the ground taken furnished no reason for reversing the decree below, and that it must be affirmed.

## Case No. 12,330.

### The SANTEE.

[7 Blatchf. 186.] [1]

Circuit Court, S. D. New York.   March 19, 1870. [2]

BILL OF LADING—FAILURE TO DELIVER—CARRIERS —NOTICE OF DISCHARGE OF CARGO.

1. Where a bill of lading, covering the shipment of bales of cotton by a vessel, contained a clause that such bales should be at the risk of the owner, shipper, or consignee thereof, as soon as delivered from the tackles of the vessel at her port of destination, and that they should be received by the consignee thereof, package by package, as so delivered, and that, if not taken away the same day by him, they might be permitted to lie where landed, at the risk of such owner, shipper, or consignee, the consignee libelled the vessel for the non-delivery of some of the bales. It appeared that the consignee had proper notice of the arrival of the vessel, and of her discharge, and that the proffer of discharge was at a reasonable and proper time, and that the consignee had an opportunity, by reasonable diligence, to identify his cotton and receive it, and it was placed safely on the wharf, when discharged, and was not actually delivered by the agents of the vessel to another party: *Held*, that the vessel was not liable for the loss of the cotton.

[Cited in Willis v. The City of Austin, 2 Fed. 413; The Surrey, 26 Fed. 794; Constable v. National Steamship Co., 14 Sup. Ct. 1068, 1075.]

[Distinguished in Collins v. Burns, 63 N. Y. 5.]

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming Case No. 12,328.]